**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 19-21220-CIV-GOODMAN**
**[CONSENT CASE]**

PATRICIA MORRISON,

      Plaintiff,

v.

ROYAL CARIBBEAN CRUISES, LTD.,

      Defendant.

_____/

**ORDER ON DEFENDANT'S SUMMARY JUDGMENT MOTION**

To squeak by is "to manage to accomplish something by very narrowly overcoming some difficulty" or to "manage to survive or subsist within a very narrow margin." *Farlex Dictionary of Idioms*, https://idioms.thefreedictionary.com/squeak+by (last visited Sept. 8, 2020). In the world of federal civil procedure involving personal injury lawsuits against cruise ship operators, squeaking by a defense summary judgment motion on the issues of whether a purportedly dangerous condition is open and obvious, and whether the operator had actual or constructive notice of the dangerous condition, which supposedly caused the plaintiff's injury, means that the plaintiff will be permitted to at least present her challenge-filled case to a jury at trial.

In the instant case, Patricia Morrison filed a one-count negligence lawsuit against

Royal Caribbean Cruises, Ltd. ("RCCL") because of injuries she allegedly suffered when she tripped over an ashtray at the end of an aisle in a casino aboard the *Enchantment of the Seas* on February 25, 2019. In her **complaint**, Morrison alleged that a vacant wheelchair left in the walkway by an RCCL crewmember "*obstructed*" her view of the ashtray, which was "not readily observable." [ECF No. 1, p. 2 (emphasis added)]. In her **deposition**, however, Morrison testified that the wheelchair was **not** blocking her view of the ashtray. Instead, she testified, a wheelchair "*distracted*" her and caused her to not notice the ashtray because she was focusing on the wheelchair. [ECF No. 60-1, p. 15].

In a written statement she filled out in her own words after the incident, Morrison did not mention a wheelchair at all. Her written statement said, "I went immediately around corner from where I was sitting with my friend and did not see metal 2 ft. tall metal ashtray in aisle someone had moved from the end of the aisle to the corner, direct in aisle. I went right over it with a glass in my hand." [ECF No. 60-13, p. 14].

During discovery, RCCL provided information about a few passengers who tripped over wheelchairs left in the casino, but no incidents of passengers tripping over ashtrays in the casino or being distracted by a wheelchair and then tripping over an ashtray.

There is a factual dispute about the specific location of the ashtray and whether it was "moved" by someone (presumably another passenger) or whether it was exactly where RCCL intended it to be in the casino. Morrison argues that the ashtray was an

unreasonable tripping hazard *even if* it was where RCCL intended to place it. She contends that it was located in a "blind spot" at the end of an aisle, slightly around the corner. [ECF No. 60, p. 11].

Morrison did not retain an expert witness on liability, however. So the blind spot theory is merely her own personal opinion.

RCCL concedes that a crew member would have placed a two-foot-tall standing ashtray back to its expected spot *if* someone had moved it to the middle of an aisle.

For the reasons outlined below, the Court concludes that Morrison has barely squeaked by RCCL's summary judgment motion and therefore **denies** it. This ruling is in large part based on the principles that (1) summary judgment is unavailable if there are any material factual disputes; (2) the Court cannot weigh conflicting evidence at the summary judgment stage; (3) the Court must view the evidence in the light most favorable to the non-movant (i.e., Morrison); and (4) the trial court must recognize that a fact-finder *could* make inferences about constructive notice.

The Court, who will be the finder of fact at a bench trial, will not be subject to these limitations at trial, however. Depending on how the evidence unfolds, RCCL's current positions on whether the ashtray was open and obvious and whether the ashtray was in a dangerous position long enough for RCCL to be on constructive notice of it during its exercise of reasonable care and to take corrective action (e.g., moving it away from the corner, assuming it was there and assuming that RCCL did not want it there) may prevail.

For now, though, Morrison has barely wriggled through the legal minefield created by RCCL's summary judgment motion. In other words, she has squeaked by a potentially fatal motion and has survived to confront those same thorny issues again at trial, where the legal landscape will not be as forgiving (and where factual disputes and credibility determinations *will* be resolved, a result unavailable in the summary judgment context).

## I.   Procedural and Factual Background

Morrison filed a one-count negligence complaint against RCCL. Although the complaint contains only one count, that one count alleges that RCCL breached its duty of reasonable care in 29 different ways. For purposes of the summary judgment motion, Morrison alleged that RCCL: (1) failed to inspect, keep, and maintain the walkways in the casino in a reasonable safe condition, to help prevent hazards to its passengers; (2) failed to install proper and reasonable safeguards to prevent passengers from injury when walking in the casino aisles; (3) failed to warn her of the "risk-creating conditions" of walking on the casino walkways; (4) failed to have adequate policies and procedures to keep the casino walkways safe; (5) failed to adequately train its crew to keep the casino walkways free and clear of hazards; (6) failed to make the standing ashtrays "objectively perceivable to passengers with warning signs"; (7) failed to warn Morrison of the "hidden danger" of the floor standing ashtrays in the casino; and (8) failed to prevent improper and dangerous use of the casino's floor standing ashtrays. [ECF No. 1, pp. 4-5].

Plaintiff's complaint alleges, "she tripped and fell on a floor stand ashtray that was protruding into the walkway. The ashtray was not readily observable because it was obstructed by a vacant wheelchair left in the hallway by Defendant's crewmember." *Id.* at p. 2.

At the time of the incident, Morrison walked through an aisle that had slot machines on both sides of her.

Morrison had consumed at least three glasses of wine. Although the ship doctor's report describes her as intoxicated, the doctor later explained that he had not administered a breathalyzer and could not conclusively confirm that she was, in fact, intoxicated. Morrison admits to having three glasses of wine over the course of several hours before she tripped and fell in the casino.

In her deposition, Morrison said she was distracted when she fell:

Q: The wheelchair didn't obstruct your view of the ashtray; correct?

A: When I went around, I saw the wheelchair to the left and so my vision was probably more that way and that's when I fell.

Q: So it didn't—it distracted you, it sounds like, more than anything else?

A: Yes, it made me veer more to the right.

Q: Because naturally there's a wheelchair there, you were focusing on the wheelchair?

A: Right.

Q: And because you're focusing on the wheelchair, you didn't notice the ashtray there; correct?

A: I veered more to the right because of the wheelchair being to the left.

[ECF No. 60-1, pp. 15-16].

Further, the ashtray was next to an empty stool. *Id.* at p. 9. ("Q: So when you turn into the aisle, is it the first stool and was the ashtray next to the first stool on your right? A: It was behind the first stool. A: Was anybody sitting on the stool? A: No.").

Plaintiff completed a statement and wrote that the ashtray she tripped over was a "2ft tall metal ashtray." [ECF No. 45-2, p. 2].

Morrison was travelling with her friend, Christine Joyce, who also provided a written statement after Morrison fell, noting that the ashtray Plaintiff tripped over was "2-3 ft" tall. [ECF No. 45-3, p. 2].

Plaintiff disclosed photographs which purport to show the location of her fall. The ashtray is shown in the photographs, but the Court cannot tell whether the floor ashtray was "protruding" into the walkway, or, if it was, by how much. *See* ECF No. 45-4.

Morrison does not know who placed the ashtray in the aisle (assuming that it can be fairly said that the ashtray was *in* the aisle as opposed to being at the end of the walkway, around the corner) or how long it had been there. *Id.* at p. 10 ("Q: Do you know who moved this ashtray? A: I do not. Q: Do you know how long it had been in that position? A: I do not.").

Morrison did not retain an expert to provide opinions on liability. Thus, she has not provided any expert opinions to support her contentions that the standing ashtray's

designated location was in a blind spot or was unreasonably dangerous or created a

dangerous condition.

Before Plaintiff's incident, Donald Damron fell in the casino aboard a different

ship, the *Oasis of the Seas*, on April 8, 2018, and said that:

> a [w]heelchair was in middle [sic] of floor. Turned from slot machine and
> tripped over chair. Arm of chair tore skin from left arm. What do you
> believe causes [sic] incident? Person careless in leaving chair in middle of
> floor. What could you or anyone else have done to avoid this incident?
> Move chair.

[ECF No. 60-13, pp. 124-25]. As to Mr. Damron's incident, an RCCL corporate

representative testified that "after review of the CCTV, it appears that wheelchair [sic]

was parked next to slot machine [sic] by one of the guests. And the guest tripped on it."

*Id.* at pp. 125-26.

Before Plaintiff's incident, on August 23, 2017, in the casino aboard a different ship,

the *Majesty of the Seas*, Ms. Susan Humeston was "[w]alking through in aisle, very narrow,

and a something chair -- wheelchair was parked and wheels were out in aisle. I fell over

wheelchair into people and large toenail three-fourths off, and leg cut and bruised . . .

[t]he guests should not put their wheelchair in the aisle to avoid incident." *Id.* at p. 131

(internal quotations omitted).

Moreover, in an April 27, 2017 incident on the *Majesty of the Seas*, when returning

to the slot machines, Ms. Carole Kossoff "fell hard when passing a woman's wheelchair

that was sticking out in the [a]isle." [ECF No. 60-9, p. 1].

Before Morrison's incident, on January 29, 2019, passengers Linda Monismith and Terry Nathan also tripped over wheelchairs in the casino on the *Grandeur of the Seas*, another RCCL cruise ship.

Morrison had previously seen ashtrays such as these bolted down in Las Vegas, so they could not be moved, and she had also seen ashtrays that were sufficiently heavy such that patrons could not easily move them.

When Plaintiff took RCCL's corporate representative's deposition, she testified that "Royal Caribbean [did not] communicate any information to passengers regarding the ashtray[,] [o]r regarding ashtrays in general[,] . . . [or any information to passengers about wheelchairs[.]" [ECF No. 60-13, p. 73]. Morrison contends that this means that RCCL did not communicate any warnings to its passengers regarding ashtrays or wheelchairs.

Plaintiff was not provided any warning about any dangers pertaining to the casino, including the purported danger of materials in the walkways and the danger of blind spots when turning corners. *Id.* at pp. 73-74 ("Q: I mean, does Royal Caribbean provide any information to passengers about safety in the casino? A: There is a guest familiarization video that Royal Caribbean shows to passengers about general, you know, watch where you're walking, type of stuff. But specifically safety in the casino, no. We don't -- we don't, no. Besides the guest familiarization video, no. Q: Okay. The guest

familiarization video doesn't specifically mention the casino, correct? A: No. It does not.").

> RCCL's policies and procedures also require that:
>
> A: If a crew member saw an ashtray that was in the middle of the aisle, as your client alleges that it was, yes, they would have placed it back so it wasn't in the middle of the aisle. And that would have been done during one of their frequent cleanings of the ashtray.
>
> Q: Suppose that a passenger moves the ashtray and brings the ashtray close to themselves, just hypothetically. Would a crew member tell that passenger that the ashtray needs to be returned to its proper place?
>
> A: A crew member would provide them with a smaller glass ashtray, and return the other one to its place because that's why we have the smaller glass ashtrays. . . . it's important that they're cleaned out, they're not overflowing, that if there's too many, I guess, it could cause a fire.

*Id.* at pp. 100-01.

If passengers "needed help getting off their wheelchairs, [there] would [not] be any crew member that would assist them getting off their wheelchair[.]" *Id.* at p. 114.

Morrison contends that she tripped in a dimly-lit portion of the casino and that flashing slot machines "hindered [her] ability to perceive the ashtray." [ECF No. 60, p. 11]. She also says the ashtray was dark and blended in with the background.

Morrison's sustained injuries to her face as a result of falling on the wine glass she was holding when she tripped over the ashtray. Even RCCL's expert concedes that Morrison will have a permanent scar on her right cheek which is visible at conversation distance. The permanent scars on the right lower eyelid, right upper lip, and right

zygoma do not (according to RCCL's expert) appear to be perceptible at conversation distance.

RCCL's expert noted that Morrison had not achieved maximum medical improvement when he examined her on October 7, 2019 and he therefore said it was too early to determine if the right cheek scar will need to have a revision. If it does, then the procedure could be done under local anesthesia in the office at an estimate fee of $1,200.

The parties have a significant dispute on neurological issues. Morrison contends she suffered traumatic brain injuries as a result of the fall but RCCL's expert neurologist opines that there is no objective confirmation of "any neurological process emanating from" her fall over the casino ashtray. [ECF No. 66, p. 6].

a.   Additional Observations About the Facts

Although RCCL's counsel asked Morrison at her deposition if she knows who moved the ashtray, the question *assumes* that the ashtray was in fact moved -- but that assumption is far from clear on the record presented to me. It may well be that the ashtray was not moved at all. No one has presented the Court with photos of the other ashtrays in the casino to illustrate where the ashtray in question was supposed to be located.

In addition, Morrison says that her view of the ashtray was obstructed by a chair (i.e., a stool used by slot machine players, not a wheelchair) and it may be that someone moved that stool/chair. Again, the record is fuzzy on this factual point. And no one has shown the Court evidence of where the stools are typically placed in the casino to

illustrate whether anyone moved the stool to a dangerous or potentially dangerous location.

Although Morrison contends that a nearby wheelchair *distracted* her, no one has presented the Court with photographs or videos depicting the wheelchair or where it was in connection to the ashtray which Morrison tripped over.

## II.    Applicable Legal Standards and Analysis

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citation omitted). Thus, the Court may enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The moving party must "show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). If the movant does so, then "the burden shift[s] to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Id.* A genuine factual dispute exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving

party." *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999). The opposing party must proffer more than "a mere scintilla of evidence" to show "that the jury could reasonably find for that party." *Abbes v. Embraer Servs., Inc.*, 195 F. App'x 898, 899-900 (11th Cir. 2006) (internal quotations omitted).

When deciding whether summary judgment is appropriate, the Court views all facts and resolves all doubts in favor of the nonmoving party. *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013) (affirming order denying defendant's summary judgment motion on qualified immunity because of factual issue). And when conflicts arise between the facts evidenced by the parties, courts must "credit the nonmoving party's version." *Id.* at 1252.

If there are any factual issues, the Court must not decide them; it must deny the summary judgment motion, and the case then proceeds to trial. *See Whelan v. Royal Caribbean Cruises Ltd.*, No. 1:12CV-22481, 2013 WL 5583970, at *2 (S.D. Fla. Aug. 14, 2013) (citing *Envtl. Def. Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981)). The Court cannot weigh conflicting evidence to resolve factual disputes. *See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007) (citation omitted) (reversing in part summary judgment). Even when the parties "agree on the basic facts, but disagree about the inferences that should be drawn from these facts," summary judgment "may be inappropriate." *Whelan*, 2013 WL 5583970, at *2. *See generally Johnson v. NCL (Bahamas) Ltd.*, No. 16-21762, 2017 WL

1293770, at *2 (S.D. Fla. Feb. 3, 2017) (denying summary judgment motion in passenger's slip and fall lawsuit against cruise ship operator).

Our Circuit does not hesitate to reverse orders improvidently granting summary judgment motions, and has noted that "even if a district court 'believes that the evidence presented by one side is of doubtful veracity, it is not proper to grant summary judgment on the basis of credibility choices.'" *Feliciano*, 707 F.3d at 1252 (citing *Miller v. Harget*, 458 F.3d 1251, 1256 (11th Cir. 2006)).

Moreover, "as a general principle, a plaintiff's testimony cannot be discounted on summary judgment unless it is blatantly contradicted by the record, blatantly inconsistent, or incredible as a matter of law, meaning that it relates to facts that could not have possibly been observed or events that are contrary to the laws of nature." *Feliciano*, 707 F.3d at 1253.

This action is governed by federal maritime law because Morrison's injury occurred on a ship sailing in navigable waters. *See Carroll v. Carnival Corp.*, 955 F.3d 1260, 1263-64 (11th Cir. 2020) (citing *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 720 (11th Cir. 2019)). "In analyzing a maritime tort case, we rely on general principles of negligence law." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012) (quoting *Daigle v. Point Landing, Inc.*, 616 F.2d 825, 827 (5th Cir. 1980)).

To prevail on her maritime negligence claims, therefore, Morrison must prove that (1) RCCL had a duty to protect her from a particular injury; (2) RCCL breached that duty;

(3) the breach actually and proximately caused her injury; and (4) she suffered actual harm. *Carroll*, 955 F.3d at 1264; *see also Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1280 (11th Cir. 2015).

With respect to the duty element, a cruise line like RCCL owes its passengers "a duty of reasonable care under the circumstances." *Sorrels*, 796 F.3d at 1279 (internal citation omitted). This requires, as "a prerequisite to imposing liability," that RCCL "have had actual or constructive notice of the risk-creating condition[.]" *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989). Thus, RCCL's liability "hinges on whether it knew or should have known" of the dangerous condition. *Id.*

    a.  <u>Failure to Warn/Open and Obvious</u>

The analysis used in this Order begins with assessing Morrison's claim that RCCL negligently failed to warn her of a dangerous condition, and then evaluating her claim that the cruise ship operator negligently failed to maintain a safe walkway in the onboard casino.

"An operator of a cruise ship has a duty to warn only of known dangers that are not open and obvious." *Carroll*, 955 F.3d at 1264 (citing *Guevara*, 920 F.3d at 720 n.5). And, "[i]n evaluating whether a danger is 'open and obvious' we are guided—as in general tort law—by the 'reasonable person' standard." *Carroll*, 955 F.3d at 1264 (citing *Lamb by Shepard v. Sears, Roebuck & Co.*, 1 F.3d 1184, 1189-90 (11th Cir. 1993)).

The question, therefore, is "whether a reasonable person would have observed the [ashtray] and appreciated the risk of walking [down the casino walkway and around the corner] under the circumstances." *Carroll*, 955 F.3d at 1264.

"Open and obvious conditions are those that should be obvious by the ordinary use of one's senses." *Lugo v. Carnival Corp.*, 154 F. Supp. 3d 1341, 1345-46 (S.D. Fla. 2015) (quoting *Lancaster v. Carnival Corp.*, 85 F. Supp. 3d 1341, 1344 (S.D. Fla. 2015) (noting that open and obvious conditions are "discernible through common sense and the ordinary use of eyesight")).[1]

According to RCCL, the allegedly dangerous condition -- a standing ashtray approximately two feet tall -- was open and obvious as a matter of law. It emphasizes that the wheelchair mentioned in the complaint did not in fact block her view, Morrison was *distracted* and had at least three glasses of wine, and that the photographs submitted to the Court show that the ashtray and stool were open and obvious. The mere fact that

---

[1]     "A cruise line does not need to warn passengers or make special arrangements for open-and-obvious risks. . . . In determining whether a risk is open and obvious, we focus on what an objectively reasonable person would observe and do not take into account the plaintiff's subjective perceptions." *Horne v. Carnival Corp.*, 741 F. App'x 607, 609 (11th Cir. 2018) (internal quotation marks and citations omitted); *see also Krug v. Celebrity Cruises, Inc.*, 745 F. App'x 863, 866 (11th Cir. 2018) ("Under federal admiralty law, a cruise ship has no duty to warn of known dangers that are open and obvious. . . . We evaluate whether a danger would be open and obvious from an objectively reasonable person's point of view and do not focus on the plaintiff's subjective perspective.").

Morrison was distracted, RCCL contends, does not mean that the condition was dangerous or that it was not an open and obvious circumstance.

There is certainly a logical argument to make about the open and obvious nature of a floor-standing ashtray. RCCL notes that the ashtray is out in the open, at the end of a walkway, and anyone walking in the area should be able to see it. *See Krug*, 745 F. App'x at 866 (finding no duty to warn because no hidden danger in playing a trivia game onboard a cruise ship).

Morrison's first argument is that the issue of whether the condition was open and obvious is a fact issue which simply cannot be resolved in the summary judgment context. In support, she cites *Johns v. Pettibone Corp.*, 769 F.2d 724, 726 (11th Cir. 1985). *Johns* does in fact hold that "the issue of openness and obviousness of the **danger** is a fact issue which cannot be disposed of by summary judgment." *Id.* at 726 (emphasis added). Other courts have followed this philosophy and not decided the open and obvious issue through a summary judgment ruling. *See Geyer v. NCL (Bahamas) Ltd.*, 204 F. Supp. 3d 1354, 1358 (S.D. Fla. 2016) (noting that courts found "summary judgment inappropriate"); *see also Sosa. v. Carnival Corp.*, 423 F. Supp. 3d 1336, 1339 (S.D. Fla. 2018).

On the other hand, our appellate court *has* affirmed defense summary judgments on the open and obvious issue, including in cruise ship cases. *See Krug*, 745 F. App'x at 866 (affirming summary judgment for cruise ship operator and concluding that danger of playing a music trivia game requiring a passenger to run up to the stage, grab the

microphone, and shout the name of the song was open and obvious, thereby negating a duty to warn).

Given *Krug*, the Undersigned cannot agree that the open and obvious issue can **never** be determined in the summary judgment context. *See Leroux v. NCL (BAHAMAS) Ltd.*, 743 F. App'x 407, 408 (11th Cir. 2018) (affirming order granting summary judgment to defendant cruise ship operator on unsuccessful duty to warn claim because the purported dangerous condition -- a threshold -- was an open and obvious danger); *see also Cigainero v. Carnival Corp.*, 426 F. Supp. 3d 1299, 1305 (S.D. Fla. 2019) (granting summary judgment to defendant cruise ship operator because wet floor was an open and obvious danger).

Moreover, she further argues that the question is not whether a condition itself was open and obvious. Instead, she says, the issue is whether the *danger* of the condition was open and obvious. *See, e.g., Petersen v. NCL (Bahamas) Ltd.*, 748 F. App'x 246, 250 (11th Cir. 2018) (reversing summary judgment for cruise ship on negligence claim in slip and fall case and explaining that "furthermore, we agree that, although the wetness of the deck was open and obvious, the unreasonably slippery state of the deck may not have been open and obvious to a reasonable person"); *Frasca v. NCL (Bahamas), Ltd.*, 654 F. App'x 949, 952 (11th Cir. 2016) (reversing summary judgment for cruise ship and noting that the deck's visible wetness and weather conditions might not alert a reasonable observer to the *extent* of the deck's slipperiness, thereby leaving the open and obvious

17

issue for a jury); *Knickerbocker v. Bimini SuperFast Operations, LLC*, No. 13-24500, 2014 WL 12536981, at *8 (S.D. Fla. Nov. 21, 2014) (rejecting defendant's open and obvious argument because "it is the dangerous condition of an object which must be open and obvious, not simply the object itself").

The Court has examined the photographs of the ashtray submitted in the record and, based on at least the angle used in the photographs, it appears that it could support the inference that the ashtray was blocked by the chair. In other words, the photographs (and there might be others showing a contrary perspective) could lead a reasonable trier of fact to conclude that this particular ashtray was not open and obvious at the time Morrison tripped over it because the stool was blocking Morrison's view of it, at least partially. On the other hand, other fact-finders could easily and logically reach a contrary conclusion.

In addition, it is difficult for the Undersigned to *conclusively* determine that the tripping risk associated with the ashtray was open and obvious because the specific path Morrison took, the position of the stool, the precise location of the ashtray (i.e., was it slightly around the corner from the walkway or protruding into the walkway or aisle) and whether her view was blocked are all factual issues which prudence dictates would be best resolved by the trier of fact. *See Carroll*, 955 F.3d at 1265 (reversing summary judgment for cruise line operator because the record supports an inference that a reasonable person in the passenger's circumstances would not have observed a chair leg

obstructing her path, thereby creating a factual dispute as to whether the danger associated with the walkway was open and obvious).

In *Carroll*, the plaintiff's foot clipped the leg of a lounge chair on a curved walkway, causing her to fall. The trial court concluded that the chair was open and obvious, thus negating a duty to warn. Specifically, the trial court noted that the placement of deck chairs on an open deck, on a clear and sunny day, was an open and obvious condition. The trial judge relied on Plaintiff's testimony that she could have seen the chair leg had she looked down.

The appellate court, however, relied on Plaintiff's testimony that she walked behind her husband after passing the first lounge chair because the walkway narrowed and that her **view was blocked** by her husband.

The ashtray in the instant case is arguably *less* open and obvious than the deck chairs in *Carroll*. The chairs were outside, in daylight, while the ashtray here was inside, behind or blocked or partially blocked by a stool, with casino lights flashing. In addition, Morrison testified that her view was blocked by the stool.

Thus, in order to accept RCCL's position that the ashtray was in fact indisputably open and obvious and that a defense summary judgment is appropriate, the Undersigned would, in effect, need to conclude that the reversal in *Carroll* was incorrect. If the plaintiff in *Carroll* was ultimately able to escape an adverse summary judgment concerning the open and obvious nature of deck chairs on a sunny day, then surely Morrison can for

now dodge an adverse summary judgment concerning the open and obvious nature of a floor ashtray placed behind a stool inside a casino with flashing lights. *See generally Taylor v. Royal Caribbean Cruises, Ltd.*, 437 F. Supp. 3d 1255, 1260-61 (S.D. Fla. 2020) (denying cruise ship operator's summary judgment motion because of factual issues surrounding the open and obvious issue arising from passenger's participation in the Ripcord by iFly activity, in which a passenger floats, with an instructor's assistance, in a skydiving position in a large clear tube with recirculating wind).

In *Carroll*, the appellate court highlighted the plaintiff's use of an expert who opined that the width of the walkway would have been below industry standards if the chairs were in the lay flat position. The Court also noted that the record reflects disputes of material fact about whether the chairs were in the upright or lay-flat position at the time of the accident and whether the chairs were in or out of line or position. Here, however, **Morrison has not retained any expert** to opine that the ashtray was located in a blind spot or that the location where RCCL intended it to be violated any type of standard.

Therefore, although Morrison has for now avoided summary judgment on the open and obvious issue, she will likely face significant evidentiary hurdles at trial when trying to establish her negligence-based claim that Carnival breached its alleged duty to warn of the so-called dangerous condition of the ashtray. If the finder of fact determines that the ashtray and the danger allegedly associated with it were open and obvious (and

the fact-finder -- me -- very well may), then she will not prevail on this category of her negligence claim.

b.   Notice of the Dangerous Condition

The open and obvious nature of a risk does not render the duty to render reasonable care superfluous, however. **Even if** the risk of the danger associated with the ashtray was open and obvious, **this does not preclude a negligence maintenance claim**. As unequivocally explained in *Carrroll*, a cruise ship operator "may still be liable for maintaining a dangerous condition **even if the danger was obvious**." 955 F.3d at 1267 (emphasis added) (deciding issue as one of first impression).

Although Morrison may have been contributorily negligent, this is not a *per se* bar to her recovery under admiralty law. *Id.* at 1269.

In the absence of actual notice (and Morrison is not asserting that theory), a plaintiff can establish constructive notice by (1) presenting evidence that the risk-creating condition existed for a sufficient period of time to invite corrective measures; or (2) submitting "evidence of substantially similar incidents in which conditions substantially similar to the occurrence in question must have caused the prior incident." *Sutton v. Royal Caribbean Cruises, Ltd.*, 774 F. App'x 508, 511 (11th Cir. 2019); *see also Marshall v. Royal Caribbean Cruises Ltd.*, No. 0:16-CV-21140, 2017 WL 5308902, at *6 (S.D. Fla. Jan. 6, 2017), *aff'd*, 706 F. App'x 620 (11th Cir. 2017).

To support her contention that RCCL was on constructive notice of the purported dangerous condition, Morrison focuses on the prior incidents disclosed by RCCL in discovery to support her reliance on the "substantial similar doctrine." That doctrine requires a party to provide evidence of "conditions substantially similar to the occurrence in question [that] caused the prior accident." *Jones v. Otis Elevator Co.*, 861 F.2d 655, 661-62 (11th Cir. 1988) (citation omitted).

The "substantial similarity" doctrine does not require identical circumstances, and it allows for some play in the joints depending on the scenario presented and the desired use of the evidence. *Sorrels*, 796 F.3d at 1287.

RCCL emphasized the lack of evidence of prior similar accidents -- which it defines to be those involving trips over ashtrays and trips over ashtrays obscured by stools and/or wheelchairs, which is what Plaintiff alleges caused her to fall. RCCL notes that there is no evidence of who placed the ashtray, stool, or wheelchair in the area, and no evidence of how long any of those objects had been in the area. Similarly, it points out that there is no expert opinion to support Morrison's liability claims.

Therefore, RCCL argues, because there is no evidence of actual or constructive notice in the record, liability cannot arise as a matter of law. *Salazar v. Norwegian Cruise Line Holdings, Ltd.*, 188 F. Supp. 3d 1312, 1319 (S.D. Fla. 2016). "There is no evidence in the record of any accident reports, passenger comment reviews or forms, or reports from safety inspections alerting Carnival of any potential safety concern." *Cohen v. Carnival*

*Corp.*, 945 F. Supp. 2d 1351, 1355-56 (S.D. Fla. 2013) (citing *Smolnikar v. Royal Caribbean Cruises, Ltd.*, 787 F. Supp. 2d 1308, 1323-24 (S.D. Fla. 2011) (finding that the cruise line had no actual or constructive notice of any risk-creating condition from a zipline tour operator because "Royal Caribbean had positive information about [the tour operator], and there is no evidence that Royal Caribbean received any form of notice regarding the existence of an alleged danger, as there were no accident reports from [the tour operator], or passenger comment forms or reviews, alerting Royal Caribbean as to a potential safety concern of the tour")).

RCCL also relies on *Samuels v. Holland Am. Line-USA, Inc.*, 656 F.3d 948, 953-54 (9th Cir. 2011) (finding that the cruise line did not have actual or constructive notice of any danger to passengers to wading on a beach because there was no evidence in the record that any other passenger had ever been injured on that beach and the cruise line was not "aware of any similar accident, or any accident at all, that had previously occurred while a Holland American passenger was swimming on the Pacific Ocean side of Lover's Beach") and *Weiner v. Carnival Cruise Lines*, No. 11-CV-22516, 2012 WL 5199604, at *5 (S.D. Fla. Oct. 22, 2012) (finding no evidence "that spills and accidents of the sort" plaintiff experienced occurred enough to "impute constructive notice").

At bottom, RCCL contends that the incident reports it produced were not substantially alike to meet the substantially similar doctrine. *See generally Sorrels*, 796 F.3d at 1287-88 (affirming district court's ruling that "evidence of 22 other slip and fall

incidents" aboard defendant's vessel did not meet the "substantial similarity doctrine" as none of the falls occurred where plaintiff fell, other injured passengers wore varying styles of footwear, and additional factors were involved).

Although this case involves a wheelchair because Morrison says she was "distracted" by a wheelchair, that is significantly different than a trip and fall incident where a passenger (or crewmember) tripped over a wheelchair left in a walkway or an incident where a wheelchair was blocking another object in the walkway.

The Court therefore concludes that the prior incidents of trips over wheelchairs are not sufficiently similar to the facts here -- a passenger tripping over an ashtray because, in part, she says she was *distracted* by a wheelchair. *See generally Jordan v. Celebrity Cruises, Inc.*, No. 1:17-20773, 2018 WL 3584702, at *11 (S.D. Fla. July 25, 2018) (concluding that Plaintiff passenger's evidence "runs counter" to our circuit's substantial similarity doctrine); *cf. Prather v. NCL Bahamas, Ltd.*, No. 19-21832, 2020 WL 4501809 (S.D. Fla. 2020).

Nevertheless, evidence that a ship owner has taken corrective action can establish notice of a dangerous or defective condition. *See, e.g., Carroll*, 955 F.3d at 1265; *Guevara*, 920 F.3d at 721 (involving a warning sign alerting passengers to "watch your step"); *Sorrels*, 796 F.3d at 1288 (involving ship employees testimony that ship would sometimes post a warning sign on the pool deck after it rained)).

Similar to *Carroll*, where the appellate court flagged evidence that the cruise ship operator required employees to set lounge chairs in the upright position to potentially

show notice of a dangerous condition and to render summary judgment inappropriate, the evidence here is that RCCL's corporate representative explained that employees would move an ashtray if it was spotted in a walkway or aisle.

In addition, Morrison argues that RCCL's own policies and procedures, as explained in its Rule 30(b)(6) designee's deposition testimony, also require that "[i]f a crew member saw an ashtray that was in the middle of the aisle, as your client alleges that it was, yes, they would have placed it back so it wasn't in the middle of the aisle." [ECF No. 60-13, pp. 100-01 ("Q: Suppose that a passenger moves the ashtray and brings the ashtray close to themselves, just hypothetically. Would a crew member tell that passenger that the ashtray needs to be returned to its proper place? A: A crew member would provide them with a smaller glass ashtray, and return the other one to its place because that's why we have the smaller glass ashtrays. . . . it's important that they're cleaned out, they're not overflowing, that if there's too many, I guess, it could cause a fire.")].

Although this one practice is a thin reed on which to base a notice of a dangerous condition theory, the Court concludes that it is sufficient (albeit barely) for summary judgment purposes, and therefore prevents entry of summary judgment in RCCL's favor. This same result may not necessarily occur at trial, however.

The Court now shifts to the second way in which a plaintiff may establish the requisite constructive notice: by demonstrating that the dangerous condition -- the

ashtray near the end of an aisle and which *may* have been moved -- existed for a sufficiently long amount of time so that the defendant should have known of its existence in the exercise of due care. *Aponte v. Royal Caribbean Cruise Lines, Ltd.*, 739 F. App'x 531, 536 (11th Cir. 2018) (vacating order granting summary judgment against passenger who slipped and fell on a puddle of soap in a cruise ship restroom because of fact issue about crewmember's knowledge of the soap puddle); *Thomas v. NCL (Bahamas), Ltd.*, 203 F. Supp. 3d 1189, 1191-93 (S.D. Fla. 2016) (alleged existence of puddle for 15 minutes before passenger's fall, if proven, could establish constructive knowledge of the condition).

In the instant case, both Morrison and her friend contend that the ashtray had been *moved*. But they do not cite any *evidence* to support their opinion or contention that the ashtray had, in fact, been moved. And they do not have knowledge of where RCCL *intended* the ashtray to be in the casino. RCCL contends that the ashtray had not been moved and, to the contrary, was in its intended location when Morrison tripped over it.

To bolster her argument about constructive notice, Morrison argues that the number of cigarettes in the ashtray supports the notion that the ashtray had been moved and had been in its new location for long enough for a casino employee to see it. She suggests that a smoker pulled the ashtray out of position, sat on the stool while smoking, and then filled the ashtray with his or her own cigarettes.

The Court does not view this theory as evidence-based. Instead it is an evidence-free argument based on speculation. There is no evidence, such as closed-circuit video

surveillance, that someone pulled the ashtray out of position and moved it. There is no evidence that the ashtray had been in its moved position for any specific amount of time, and there is no evidence on which to even base an inference. The number of cigarettes in the ashtray does not necessarily lead to any logical conclusions about the ashtray being moved or when it was moved. If the ashtray had been moved, then the cigarettes could have been in the ashtray before it was moved, or several different smokers could have used the ashtray at approximately the same time or within a few minutes of each other.

The Court rejects Morrison's evidence-free argument that the ashtray had been moved and had been in a dangerous location for a long enough period for an employee to see it and take corrective measures.

Moreover, the Undersigned rejects Morrison's other theory that the ashtray, even if in its intended position, was a tripping hazard. She did not introduce any expert testimony on that point, unlike the plaintiff in *Carroll*.

## III.   Conclusion

The Undersigned **denies** RCCL's summary judgment motion. Morrison will be able to proceed to trial, though that next step may be an obstacle-filled journey in which the procedural benefits she enjoyed in a summary judgment context will no longer exist to provide protection. And any favorable decision would be adversely impacted if the factfinder were to determine that Morrison was herself negligent. Nevertheless, she has

squeaked by a defense summary judgment and, assuming that the case is not settled,[2] will be permitted to present her case at trial.

     **DONE AND ORDERED** in Chambers, in Miami, Florida, on September 10, 2020.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
All counsel of record

---

[2]     Obtaining reliable information on settlement rates is difficult, as the rates appear to vary among different types of cases. The settlement rates for tort cases, for example, may be higher than those for constitutional claims. In addition, settlement rates may also vary by locale. And, obviously, settlement rates are "highly sensitive to the merits of the case." Theodore Eisenberg and Charlotte Lanvers, "What is the Settlement Rate and Why Should We Care?" (*Cornell Law Faculty Publications*, Paper No. 203, p. 124, 2009), *available at* http://scholarship.law.cornell.edu/facpub/203. Nevertheless, whatever uncertainty there might exist about specific settlement rates in particular types of cases, "settlement is the modal civil case outcome." *Id.* at p. 112.